**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH DAKOTA**

| | |
|---|---|
| IN RE:<br><br>NORTHERN BEEF PACKERS LIMITED PARTNERSHIP, a South Dakota limited partnership,<br><br>TAX ID/EIN 26-2530200<br><br>DEBTOR | NO. 13-10118<br><br>CHAPTER 11<br><br>**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING (A) SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) GRANT OF ADEQUATE PROTECTION TO 11 U.S.C. §§ 361, 363 AND 364, AND REQUEST FOR PRELIMINARY HEARING** |

Comes now the United States Trustee, through the undersigned Assistant United States Trustee, and objects to DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING (A) SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) GRANT OF ADEQUATE PROTECTION TO 11 U.S.C. §§ 361, 363 AND 364, AND REQUEST FOR PRELIMINARY HEARING (hereafter "Motion). In support of his objection the United States Trustee states as follows:

1. The United States Trustee requests the Court consider this pleading as an objection to Debtor's final request for authority to obtain secured credit as indicated by the Court's Amended Order of July 26, 2013 (Docket # 59).

2. In making this objection the United States Trustee notes that the Motion is filed before the appointment of any committee of unsecured creditors. Thus, at this

1

stage of the case, it falls to the United States Trustee and the Court to protect the legitimate interests of unsecured creditors from potential over-reaching in the Motion.

    3.  At paragraph 20A on page 5, the Motion seeks to borrow up to $4,900,000 with $600,000 to be available upon entry of an interim order.  Based on the budget attached as Exhibit A it appears the expenditures through the week of October 19, 2013, (contemplated to be the end of the case under paragraph 20R) total only $1,541,437.  Given the level of expenditure set forth in the budget the proposed borrowing would allow Debtor to operate for substantially longer than anticipated by the Motion.  As such, the amount requested to be borrowed, which obtains priority over all other debt, appears excessive.

    4.  At paragraph 20B the Motion reflects a financing fee of $65,000.  Such amount would not be unreasonable at a borrowing level of $4,900,000 (by the UST's calculations approximately 1.5%).  However, at a reduced borrowing level as appears appropriate given the expenditures set out in the budget; the fee is excessive.

    5.  At paragraph 20C on page 5 it specifies that the interest rate for DIP financing will be "16% per annum."  Even allowing for a risk related premium a 16% interest rate is not commercially reasonable; particularly in light of the additional protections afforded the lender by way of administrative priority and other considerations.

    6.  At paragraph 2.2(a) on page 20 of the DIP Loan & Security Agreement it provides that "[s]ubject to the provisions hereof, the outstanding principal balance of the Postpetition Term Loans shall bear interest from the date advanced until such Postpetition Term Loans are repaid in full  . . ..  Consistent with this provision the budget attached as Exhibit A reflects monthly interest payments of $70,000 or yearly

interest payments of $840,000.  Such a payment reflects payment of interest at 16% on the entire $4,900,000 even though the budget anticipates use of less than $2,000,000.  Charging interest of the full amount, without regard to actual amount of funds borrowed, is unreasonable and effectively increases the interest rate to well beyond the already unreasonable 16%.

      7.  At paragraph 20D on page 5 the Motion seeks to allow that "on a monthly basis" Debtor shall pay "White Oak's reasonable out of pocket expenses, including reasonable consultants', attorneys' and paralegals' fees, costs and expenses."  Nothing in this provision requires that White Oak establish that it is a fully secured creditor entitled to payment of such costs as required by 11 U.S.C. § 506(b).  In addition, this provision seeks to provide for monthly payment of amounts that have not been subject to Court review by way of a fee application as contemplated by 11 U.S.C. § 330 and, in so doing, the Motion seeks to give to White Oak a preferred status not enjoyed by other administrative creditors in the case.   (*See,* Motion, paragraph 20I and Proposed Interim Order, Paragraph 14(a)(ii) & (iii) both of which refer to the payment of only "allowed" fees and expenses.)

      8.  At paragraph 20H on page 6 of the Motion it provides that "[u]pon entry of the Final Order, $2,500,000 of outstanding Pre-Petition Indebtedness shall be converted dollar-for-dollar to indebtedness under the DIP Agreement."  Conversion of pre-petition debt to administrative priority status as described in paragraphs 20E – G of the Motion prefers White Oaks debts over similarly situated creditors.  Giving the lender rights they were not otherwise entitled too is unnecessary in light of the various protections provided for in the Motion and exceeds the legitimate purpose of a motion for post-

petition borrowing or use of cash collateral.

9. At paragraph 20K on page 6 the Motion provides that upon entry of a final order Debtor "shall be deemed to have waived any and all claims against White Oak" including, additionally, claims as to the perfection, validity, priority or enforceability of the pre-petition indebtedness. It further provides this provision shall be binding on all parties, including a creditors committee. The scope of this over-broad provision would provide White Oak with protections not available under either the sections by which they seek to authorize this motion. It would also provide White Oak with protections not available to other similarly situated creditors. Further, this provision would likely remove assets from the estate and would preclude an official unsecured creditors committee, should one be appointed, from conducting their statutorily authorized duties.

10. At paragraph 20O on page 8 the Motion seeks to incorporate a "drop dead" provision by which White Oak would be freed from the requirement of 11 U.S.C. § 362 "upon the Termination Date." The Motion fails to provide any cause for allowing White Oak to avoid the required notice to parties in interest and returning to the Court for an order should it seek to enforce its non-bankruptcy rights against Debtor's collateral.

11. At paragraph 20Q on page 8 the Motion again seeks to allow White Oak to be free from the requirements of 11 U.S.C. §§ 330 & 506(b). Specifically, the Motion provides for Debtor to pay "all reasonable and documented fees, costs and expenses of one primary counsel, one local counsel, and one financial advisor for the Agent." Although the Motion uses the terms "reasonable and documented" it omits the term "allowed" which would be required for fees and expenses approved by the Court. Thus

it appears the Motion allows the Agent to determine, without review of the Court, whether a proposed fee or expense is "reasonable" and subject to reimbursement.

12. At paragraph 20R on page 8 & 9 the Motion seeks to lock in a set time-table for sale of all or substantially all of Debtor's assets.  The parameters of this paragraph require a stalking horse bid be submitted August 15, 2013, and an auction of substantially all of Debtor's assets by October 1, 2013.  On July 24, 2103, Debtor filed a Motion to Employ Lincoln Partners Advisors LLC.  That Motion seeks to authorize Lincoln to assist Debtor with a potential sale and states that Lincoln has been engaged in similar activities on behalf of Debtor pre-petition since May, 2013.  To date, Lincoln's efforts have not resulted in an offer for purchase of Debtor's business.  Given the scope of Debtor's assets, the potentially limited market for purchasers for such a business and the likely purchase value; it is unreasonable to believe that Debtor can obtain a sale of its assets without significant marketing.  It is equally unlikely that an auction of all of Debtor's assets by a fixed date of October 1, 2013, would maximize the potential value of the sale or return to creditors.  Accordingly, absent some indication by Lincoln that such time frame is legitimate it, is unreasonable to lock Debtor into a set time frame for obtaining a sale of its assets; particularly a time frame which would effectively end the case within only 90-days of the filing.

WHEREFORE, based on the authorities set forth above, the United States Trustee respectfully requests that the Court deny DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING (A) SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) GRANT OF ADEQUATE PROTECTION TO 11

U.S.C. §§ 361, 363 AND 364, AND REQUEST FOR PRELIMINARY HEARING and for such other relief as is equitable.

Dated:  July 29, 2013.

**Daniel M. McDermott**
United States Trustee
Region 12

By:/s/ James L. Snyder
   **James L. Snyder**
   Assistant United States Trustee
   ID # IS9999967
   210 Walnut Street, Room 793
   Des Moines, Iowa 50309-2108
   Ph:  (515) 284-4982 / Fax: 284-4986
   James.L.Snyder@usdoj.gov