## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 13-10118 |
| | ) | Chapter 11 |
| NORTHERN BEEF PACKERS | ) | |
| LIMITED PARTNERSHIP | ) | **COMMITTEE'S SUPPLEMENT IN** |
| | ) | **IN SUPPORT OF DEBTOR'S MOTION** |
| Tax ID/EIN 26-2530200 | ) | **FOR POST-PETITION FINANCING** |
| | ) | **AND FOR APPROVAL OF** |
| | ) | **STIPULATION REGARDING** |
| | ) | **POST-PETITION FINANCING** |
| Debtor. | ) | |

The Official Committee of Unsecured Creditors (the "Committee") of Northern Beef Packers Limited Partnership, (the "Debtor"), by and through its undersigned counsel, submits this supplement in support of the Debtor's motion (the "Motion") for postpetition financing and for approval of a stipulation  (the "Stipulation") among the Debtor, the Committee, and White Oak Global Advisors, LLC ("Agent," and together with the Debtor and the Committee, the "Stipulating Parties") regarding postpetition financing.  In support thereof, the Committee states as follows:[1]

1.     Counsel for the United States Trustee, James Snyder, sent an email to Debtor's counsel on Friday, September 6, advising of certain concerns he had regarding the Stipulation. The Committee's counsel, Messrs. Jakubowski and Dougherty, discussed these concerns at length with Mr. Snyder on Monday, September 10, and submit this response, together with a revised and blacklined Stipulation (the "Revised Stipulation") reflecting changes that the Stipulating Parties believe adequately address all of Mr. Snyder's concerns.   Clean and

---

[1]    Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Revised Stipulation.

blacklined copies of the Revised Stipulation are attached as **Exhibits 1** and **2** hereto, respectively.

2.    The changes made in the Revised Stipulation are as follows:

a.    The Revised Stipulation provides that the Agent shall file a proof of claim no later than five days before the final hearing on the Motion. (Rev. Stip., p.2, ¶ B).

b.    The Revised Stipulation provides that any sale proceeds remaining after application of any proceeds on account of the Pre-Petition Indebtedness up to the Minimum Stipulated Claim Amount shall be distributed only upon further order of the Court, including any order confirming a chapter 11 liquidating plan. (Rev. Stip., p.9, ¶ J(7).

c.    The Revised Stipulation provides that, as a condition to obtaining relief from the automatic stay under any part of the Revised Stipulation, the Agent shall comply with the Local Rule 9021-1(b), which requires "the moving party to file an affidavit or other written statement confirming the stated condition has occurred, a certificate of service reflecting service of the affidavit or other written statement on the party against whom relief is sought, and a proposed order." (Rev. Stip. at: p.2, ¶ F; p.11, ¶¶ 9(a),(b)). However, except as expressly provided in the Revised Stipulation in respect of the Carve-Out, the Agent shall have no obligation to make further advances to the Debtor under the Revised Stipulation on or after the Termination Date.

d.    The Revised Stipulation clarifies that the Paragraph J(14) release provisions (i) only relate to claims that are (x) are claims of the Committee or its members, (y) are property of the Debtor or the Debtor's bankruptcy estate or (z) relate to the allowance of the Pre-Petition Indebtedness against the Debtor or the validity, extent and priority of the Agent's liens and security interests in the Pre-Petition Collateral and (ii) do not extend to individual claims of nondebtor or non-Committee parties that are not claims of or shared by the Committee, the Debtor and/or its estate (such as claims of nondebtors against the Agent arising under any intercreditor or subordination agreement). (Rev. Stip., p.13, ¶ J(14)).

2

e.   The Revised Stipulation is modified to provide that the PASA CD will be subject to the Asset Sale Carve Out and preserved without exception for the benefit of the Unsecured Creditor Escrow unless each of the following conditions are satisfied: (x) the Termination Date has occurred prior to the closing of an Asset Sale (whether pursuant to cash bid or Credit Bid or some combination thereof) in this Chapter 11 Case and (y) the PASA CD is determined (whether before or after the Termination Date) by a final non-appealable order to be part of the Pre-Petition Collateral.  (Rev. Stip., p.11, ¶ J(8)(ii)).

f.   The Revised Stipulation clarifies that amounts set forth in the Approved Budget only represents the limits on any payments authorized to be made by the Debtor, but no such payments shall be made without prior Court approval to the extent they are on account of (i) obligations incurred outside of the ordinary course after the date of the Interim Order or (ii) any claims (whether prepetition or postpetition) arising before the date of the Interim Order.  (Rev. Stip., p.5, ¶ J(2)).

WHEREFORE, the Committee respectfully requests that the Court consider the proposed changes to the Revised Stipulation and grant the relief requested in the Motion.

Dated:  September 11, 2013

ROBBINS, SALOMON & PATT, LTD.
/s/ Steve Jakubowski
Steve Jakubowski (Admitted *Pro Hac Vice*)
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
T (312) 456-0191
F (312) 782-6690
sjakubowski@rsplaw.com

Dated:  September 11, 2013

DOUGHERTY & DOUGHERTY, LLP
/s/ Patrick T. Dougherty
Patrick T. Dougherty
PO Box 2376
Sioux Falls, SD 57101-2376
T (605) 335-8586
F (605) 331-2519
pat@ptdlawfirm.com

*Attorneys for the Committee*

# EXHIBIT 1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| In re:<br><br>Northern Beef Packers Limited Partnership<br>SSN/ITIN 26-2530200<br><br>       Debtor. | Bankr. No. 13-10118<br>Chapter 11<br><br>**STIPULATION (REVISED) REGARDING SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)** |

Northern Beef Packers Limited Partnership ("Northern Beef"), as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), the Official Committee of Unsecured Creditors appointed in this case (the "Committee") and White Oak Global Advisors, LLC (the "Agent"), as agent for itself and the other lenders (collectively, "Lenders"), each acting through their undersigned counsel, having agreed on the terms and conditions upon which the Debtor may obtain post-petition financing (the "Post-Petition Financing") up to an aggregate principal amount not to exceed $2,250,000, plus accrued interest on the aggregate principal amount (the "Commitment"), stipulate herein (the "Stipulation") for all purposes in this Chapter 11 Case (as defined below), and request that the Court so find and order, as follows:

A.      On July 19, 2013 (the "Petition Date"), the Debtor commenced a case (the "Chapter 11 Case") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") by filing a voluntary petition for relief with this Court.  The Debtor is continuing in possession of its property, and managing its business, as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B.      The Agent, as the agent and a lender, the other Lenders, as lenders, and Northern Beef, as borrower, are parties to that certain Loan and Security Agreement dated as of September 10, 2012 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "Pre-Petition Credit Agreement") and all collateral

and ancillary documents executed in connection therewith (the "Pre-Petition Loan Documents"), pursuant to which, among other things, Lenders agreed, subject to the terms and conditions set forth in the Credit Agreement, to make certain loans and other financial accommodations to Northern Beef (the "Pre-Petition Indebtedness"). As of the Petition Date, and subject to Paragraph J(15) hereof, the amount of the Pre-Petition Indebtedness (inclusive of principal, capitalized interest, and yield maintenance amounts) plus accrued and unpaid pre-petition interest, fees, expenses and other amounts chargeable under the Pre-Petition Loan Documents, was not less than $51,213,781.00 (the "Minimum Stipulated Claim Amount"). Agent shall file a proof of claim no later than five days before the final hearing before the Court to approve this Stipulation. The Agent, the Debtor and the Committee reserve their rights with respect to any alleged amounts of the claim of the Agent for Pre-Petition Indebtedness in excess of the Minimum Stipulated Claim Amount.

       C.      The Committee and the Debtor stipulate that, in accordance with the terms of the Pre-Petition Loan Documents, the Debtor is truly and justly indebted to Lenders under the Pre-Petition Loan Documents, without defense, counterclaim or offset of any kind, and that as of the Petition Date (i) the Debtor was liable to Lenders in the amount of the Pre-Petition Indebtedness, which was not less than the amount set forth in paragraph B, above (but may be significantly more than such amount, and the Agent, the Lenders, the Debtor and the Committee reserve all rights with respect to any claim of the Agent or Lenders for an amount of Pre-Petition Indebtedness greater than that set forth in paragraph B, above), and (ii) as of the Petition Date, the Debtor and the Committee, in consideration of the Post-Petition Financing to be made under the Commitment, each waives and releases any and all causes of action and claims against the Agent and Lenders and each of their agents, representatives, assigns and successors.

D.      The Debtor and the Committee each further admits and acknowledges that, by reason of the Pre-Petition Loan Documents, the Pre-Petition Indebtedness is secured by enforceable liens and security interests granted by the Debtor to the Agent, for the benefit of Lenders, upon and in substantially all of the Debtor's assets and property, including[1] all of the Debtor's real property and all of the Debtor's assets and property in which a security interest can be obtained under the Uniform Commercial Code (including the setoff rights described below, the "Pre-Petition Collateral"), including equipment, inventory, accounts receivable, instruments, chattel paper, general intangibles, contracts, documents of title, and all other tangible and intangible personal property and the proceeds and products thereof.

E.      The Debtor does not have sufficient available sources of working capital and financing to maintain its assets or to pursue asset sales to maximize the value of the Debtor's estate without the Post-Petition Financing.  The ability of the Debtor to maintain and protect its assets is essential to maximizing the Debtor's estate while the Debtor pursues sale options.  The Debtor's need for financing is critical and immediate.  In the absence of the Post-Petition Financing there will be no funds to protect and maintain the Debtor's production facility and other assets and serious and irreparable harm to the Debtor and its estate would occur.  The permission to enter into the Post-Petition Financing and obtain funds hereunder is necessary to avoid immediate and irreparable harm to the Debtor.  This Stipulation and the Post-Petition Financing is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the flow of supplies and services to the Debtor necessary to preserve and protect the Debtor's assets, and for administration of this Chapter 11 Case so as to maximize the value of the Debtor's estate

---

[1]  The rules of construction set forth in section 102 of the Bankruptcy Code are incorporated by reference herein and shall apply to this Order.

F.      The Debtor and the Committee hereby stipulate and agree that they hereby consent, in the event that the Court fails to enter an order approving this Stipulation and the Post-Petition Financing set forth herein by September 12, 2013, to any request of Agent thereafter for relief from the automatic stay with respect to the Collateral, subject to the provisions of Local Rule 9021-1(b).

G.      Given the Debtor's current financial condition and capital structure, the Debtor is unable to obtain unsecured credit solely allowable under Bankruptcy Code § 503(b)(1) as an administrative expense.  Financing on a post-petition basis is not otherwise available without the Debtor securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to Bankruptcy Code § 364(c).

H.      The Debtor, the Committee and the Agent have stipulated that the Post-Petition Financing has been negotiated in good faith and at arm's-length between the Debtor, the Committee and the Agent, and any credit extended and loans made to the Debtor pursuant to this Stipulation shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code § 364(e).

I.      The Debtor, the Committee and the Agent have stipulated that the terms of this Stipulation, including the terms of the Post-Petition Financing, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

J.      The Debtor, the Committee and the Agent hereby stipulate to the following Post-Petition Financing Terms, which reflect a settlement and compromise between the Agent, the Debtor and the Committee after significant arms' length negotiations:

(1)     Post-Petition Financing Amounts.  The Agent and Lenders agree to lend, and the Debtor seeks to borrow, Post-Petition Financing in the interim amount of $512,000 through September 28, 2013 following entry of an interim order (the "Interim Order") approving this Stipulation, and, following the entry of a final order approving this Stipulation (the "Final Order"), in a total

amount (including any interim amounts borrowed) of up to $2,250,000 through the remaining period set forth in the Approved Budget (the "Budget Period"). The Agent and the Debtor agree to execute any customary loan, security or perfection documents ("DIP Loan Documents") deemed necessary by Agent (if any) to further reflect or memorialize the terms of the Post-Petition Financing as set forth herein.

(2)     Budget and Funding Mechanics.  The Post-Petition Financing will be used by the Debtor only to fund the amounts set forth in the budget attached hereto as Exhibit A (the "Initial Approved Budget") or in any subsequent or modified budget as agreed to by the Debtor, the Agent and the Committee (such subsequent or modified budget, together with the Initial Approved Budget, an "Approved Budget").  The Post-Petition Financing will be funded into an escrow account designated by the Agent (the "Escrow Account") and disbursed by Agent to the Debtor on a weekly basis (on Friday of each week, or as soon thereafter as practical) in the amount of the following week's aggregate budgeted expenses less any cash then held by the Debtor, to be used by the Debtor only to pay up to the budgeted amount of each budgeted category of such following week's expenses.  Within three (3) days after each weekly period, the Debtor shall provide the Agent with a statement comparing actual cash receipts with budgeted cash receipts for such weekly period and comparing actual expenditures with budgeted expenditures for such weekly period by line item.  The Debtor shall not seek, assert, argue for, encourage or support the Debtor obtaining post-petition financing or the use of the Agent's and Lenders' cash collateral within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral") by the Debtor except as agreed herein or as expressly permitted and consented to by the Agent.  The Debtor agrees that amounts set forth in the Approved Budget only represent the limits on any payments authorized to be made by the Debtor, but no such payments shall be made without prior Court approval to the extent they are on account of (i) obligations incurred outside of the ordinary course after the date of the Interim Order or (ii) any claims (whether prepetition or postpetition) arising before the date of the Interim Order.

(3)     Interest and Fees; Adequate Protection.  The Post-Petition Financing will accrue interest (which shall accrue as PIK interest) at the rate of 9% per annum.  The Agent and Lenders (a) will not currently accrue or pay any interest or fees on the Pre-Petition Indebtedness after the Petition Date, (b) defer any determination as to whether the Pre-Petition Indebtedness is over- or under-secured until a later time and (c) reserve and preserve all of their rights to seek payment of post-petition interest, fees, costs and expenses with respect to the Pre-Petition Indebtedness to the extent that the Pre-Petition Indebtedness is ultimately found to be fully secured or as adequate protection (and to seek any and all other forms of adequate protection).

(4)     DIP Lien.  The Post-Petition Financing, including interest thereon, will be secured by a valid and automatically perfected lien on and security interest in all of the Debtor's existing and after-acquired assets and proceeds thereof (but excluding causes of action (the "Causes of Action") arising under §§ 502(d), 541, 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code and all proceeds therefrom) (collectively, the "DIP Collateral," and, together with the "Pre-Petition Collateral," the "Collateral") pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code (the "DIP Lien").  Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Lien shall be (without prejudice to the effect of any applicable intercreditor or security agreements) junior to all non-avoidable valid, enforceable and perfected liens and security

interests in favor of any person or entity on or in any assets of the Debtor, as pre-petition debtor, which existed on the Petition Date and are not subject to § 552(a) of the Bankruptcy Code ("Prior Liens").  Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lien shall also extend to all unencumbered assets of the Debtor, if any, except for Causes of Action.  No liens or security interests granted to the Agent, and no claim of the Agent or Lenders, shall be subject to subordination to any other liens, security interests or claims under § 510 of the Bankruptcy Code or otherwise.  No other claims, liens or security interests (that is, other than Prior Liens and Prior Claims) shall attach to the Collateral in this or any subsequent or superseding Case (including any conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto, collectively, "Successor Case") without the express written consent of the Agent (which consent may be withheld in its sole discretion).

(5)     Covenants.  The Post-Petition Financing shall be subject to, and is expressly conditioned upon the Debtor's continuing compliance with, the following covenants by the Debtor:

        (a)     By September 16, 2013, the Debtor shall have obtained the Court's approval of the Debtor's retention of Lincoln Partners Advisors LLC, on terms and conditions acceptable to the Agent (which acceptance shall not be unreasonably withheld), to market substantially all of the operating assets of the Debtor (including the Debtor's real estate and equipment) for sale (the "Asset Sale").

        (b)     By October 15, 2013, the Debtor shall have entered into a binding agreement for an Asset Sale transaction, on terms and conditions acceptable to the Agent (which acceptance shall not be unreasonably withheld), subject to higher and better offers (the "Stalking Horse Bid") and filed a motion with the Court, acceptable in form and substance to the Agent, seeking Court approval of bid and sale procedures and seeking approval of the Stalking Horse Bid, subject to higher and better offers.

        (c)     By October 29, 2013,  the Debtor shall have obtained entry by the Court of an order, in form and substance acceptable to the Agent (which acceptance shall not be unreasonably withheld), approving bid and sale procedures, the stalking horse bid (subject to higher and better offers) and scheduling an auction date and final sale hearing in accordance herewith.

        (d)     By December 3, 2013, the Debtor and its advisors, in consultation with the Agent an the Committee, shall conduct an auction of the Debtor's operating assets.

        (e)     By December 10, 2013, the Debtor shall have obtained entry by the Court of an order, in form and substance acceptable to the Agent (which acceptance shall not be unreasonably withheld), approving the Asset Sale.

        (f)     By December 27, 2013, the Debtor will close the Asset Sale and deliver the net proceeds of such sale to the Agent after payment of all claims that are senior (after giving effect to all applicable intercreditor and subordination agreements) to the Pre-Petition Indebtedness or that are secured by Prior Liens that are senior (after giving effect to all applicable intercreditor and subordination agreements) to the liens securing

the Pre-Petition Indebtedness (up to the extent of the value of the collateral subject to the Prior Liens) ("Prior Claims") and applicable Carve Out, up to a maximum amount of $47 million of net proceeds to Agent.

(g)     The Debtor and its advisors shall provide the Agent and the counsel for the Committee with telephonic reports of all sale efforts, expressions of interest and offers received, to occur at least weekly and more frequently upon the Agent's or the Committee counsel's reasonable request, with access to Lincoln and any information that Lincoln is able to provide at Agent's and the Committee counsel's request, and with reasonable access to Debtor's employees and security company and any information that such employees and security company are reasonably able to provide at Agent's and the Committee counsel's request.

(h)     The Debtor shall keep the Agent and the counsel for the Committee informed on a current basis of the status of all written proposals, offers, letters of intent and indications of interest for purchase of the Debtor's assets received and provide the Agent and counsel for the Committee with copies of all such proposals and other related communications received from third parties within one (1) business day after the Debtor's receipt thereof.

(i)     Prior to the closing of the Asset Sale, the Debtor shall not use the Certificate of Deposit issued by Plains Commerce Bank, in the principal amount of $900,000.00, or any proceeds thereof, currently pledged to Plains Commerce Bank to support an irrevocable transferable standby letter of credit in favor of the South Dakota Animal Industry Board, as Trustee, pursuant to the Packers and Stockyards Act of 1921 (the "PASA CD") for any purposes without the joint written consent of the Agent and the Committee and the approval of the Court.  The DIP Lien extends to the PASA CD, subject to all Prior Liens, as provided in J(4) hereof.

(6)     Termination Date.  The Agent and the Lenders' willingness and Commitment to make loans hereunder shall immediately and automatically terminate upon the earliest to occur of the following (the "Termination Date"):

(i)     September 12, 2013, unless the Interim Order  is entered by the Court on or before such date, and September 30, 2013, unless the Final Order is entered by the Court on or before such date (such dates subject to extension upon the written agreement of the Agent, the Committee, and Debtor);

(ii)    December 31, 2013;

(iii)   the date of the closing of the Asset Sale;

(iv)   the date of final indefeasible payment and satisfaction in full in cash of the Pre-Petition Indebtedness and all indebtedness and obligations owed under the Post-Petition Financing (the "DIP Indebtedness," and, together with the Pre-Petition Indebtedness, the "Indebtedness");

(v)   the Debtor files any motion with the Court seeking authority to sell the Debtor's business or any of Debtor's assets outside of the ordinary course of business without the prior written consent of the Agent, or the entry of an order by the Court authorizing the sale of the Debtor's business or any of Debtor's assets outside of the ordinary course of business without the prior written consent of the Agent;

(vi)   the occurrence of any violation or breach by the Debtor or the Committee of this Stipulation (including, but not limited to, the Debtor's failure to adhere to the Approved Budget as set forth in this Stipulation or violation of the covenants set forth in this Stipulation) or the terms in any order approving this Stipulation on an interim or final basis;

(vii)  the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case into a case under Chapter 7 of the Bankruptcy Code;

(viii) a trustee or an examiner is appointed in the Chapter 11 Case without the prior written consent of the Agent, or the Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the Agent;

(ix)  the Interim Order or Final Order approving this Stipulation is stayed, reversed, vacated, appealed, amended or otherwise modified in any respect without the prior written consent of the Agent;

(x)   this or any other Court enters an order or judgment in the Chapter 11 Case modifying, limiting, subordinating or avoiding the priority of any Indebtedness or the perfection, priority or validity of the Agent and Lenders' pre-petition or post-petition liens on any Collateral or imposing, surcharging or assessing against the Agent or Lenders or its claims or any Collateral any costs or expenses, whether pursuant to § 506(c) of the Bankruptcy Code or otherwise;

(xi)  an order is entered in the Chapter 11 Case granting relief from the automatic stay of Section 362 of the Bankruptcy Code to any holder or holders of a lien on any material collateral in allowing such holder or holders to foreclose or otherwise realize upon such liens;

(xii)  any motion or application is filed in the Chapter 11 Case seeking the entry of an order, or an order is entered in the Chapter 11 Case, approving any subsequent debtor-in-possession facility for borrowed money or other extensions of credit unless such subsequent facility and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash to the Agent and Lenders of all Indebtedness prior to, or concurrently with, any initial borrowings or other extensions of credit under such subsequent facility;

(xiii) any disclosure statement or Chapter 11 plan is filed in the Chapter 11 Case without the prior written consent of the Agent; or

-8-

(xiv) the effective date of any confirmed Chapter 11 plan in the Chapter 11 Case.

Upon the Termination Date, (a) all Indebtedness shall be immediately due and payable in cash (except as the Agent may otherwise agree in writing in its sole discretion) and (b) Lenders shall have no obligation to lend or advance any additional funds to the Debtor, or provide other financial accommodations to the Debtor.

(7)     Application of Proceeds.  Subject to the Carve Out (as defined below), all proceeds of Collateral, shall be applied, subject to Prior Claims as described herein, (A) first, to the Pre-Petition Indebtedness up to at least the Minimum Stipulated Claim Amount (with the Debtor and the Committee reserving their rights with respect to any alleged amounts of the claim of the Agent for Pre-Petition Indebtedness in excess of the Minimum Stipulated Claim Amount) (in such order as determined by the Agent in its sole discretion), and (B) second, to the DIP Indebtedness (in such order as determined by the Agent in its sole discretion).  The Debtor shall not have the right to direct the manner of application of any payments to the Agent or any other receipts by the Agent of proceeds of any Collateral other than in the manner set forth in this paragraph and the Pre-Petition Credit Agreement.  Any sale proceeds remaining after application of any proceeds on account of the Pre-Petition Indebtedness up to the Minimum Stipulated Claim Amount shall be distributed only upon further order of the Court, including any order confirming a chapter 11 liquidating plan.

No sale, lease or other disposition of Collateral outside the ordinary course of business (including any auction or other similar sales) may be done without the Agent's prior written consent.  The Agent and Lenders shall have the right to credit bid up to at least $47,000,000 for any asset or assets of the Debtor offered at a sale, lease or other disposition of Collateral outside the ordinary course of business (including any auction or other similar sales), and may, if the Agent or any Lender purchases such asset or assets, offset some or all of their secured claim against the purchase price of such asset or assets (the "Credit Bid").  The provisions of the Carve Out, as provided in Section J(8) hereof, shall apply in the event of any successful Credit Bid.

(8)     Carve-Out.  The DIP Lien shall be subject only to Prior Liens and to the Carve Out, as defined below.

(i)  Professional Fee Carve Out.

(a) Agent hereby agrees that it shall (notwithstanding the occurrence of the Termination Date) fund payments of the following administrative expenses of the Estate from the Post-Petition Financing prior to the closing of the Asset Sale, and from the proceeds of the Collateral after the closing of the Asset Sale:  (1) the unpaid fees due and payable (or projected to be due and payable for the calendar quarter in which the Termination Date occurs) to the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930, and (2) the payment of Court-allowed and unpaid fees and disbursements incurred by Cozen O'Connor and Bantz, Gosch & Cremer, L.L.C. pursuant to § 327 of the Bankruptcy Code (collectively, the "Debtor Legal Professionals") prior to the Termination Date in an aggregate amount not to exceed $405,000, (3) the payment of Court-allowed and unpaid fees and disbursements incurred

-9-

by Lincoln Partners Advisors LLC ("Lincoln," and, collectively with the Debtor Legal Professionals, the "Debtor Professionals") prior to the Termination Date in accordance with the terms of the Court-approved retention of Lincoln, and (4) the payment of Court-allowed and unpaid fees and disbursements incurred by the professionals retained by the Committee pursuant to § 1103(a) of the Bankruptcy Code (collectively, the "Committee Professionals") prior to the Termination Date in an aggregate amount not to exceed $175,000, less (in each case) the sum of all unused pre-petition retainers (as of the Petition Date) and all post-petition amounts paid to the Debtor Professionals and the Committee Professionals, including all amounts paid to the Debtor Professionals and Committee Professionals from the Post-Petition Financing.  The amounts specified in clauses (1), (2), (3) and (4) of this Section J(8), including the limitations therein, are collectively referred to herein as the "Professional Fee Carve Out".

(b)   Notwithstanding anything to the contrary in this Order or the DIP Loan Documents, the pre-petition and post-petition liens and security interests shall be senior to, and no proceeds of Indebtedness or Cash Collateral (including any pre-petition retainer funded by Lenders pursuant to the Pre-Petition Loan Documents) nor any Collateral (or proceeds thereof) may be used to pay, any and all claims for services rendered by any of the Debtor Professionals or Committee Professionals in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief:  (1) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Indebtedness or the liens and security interests of the Agent or Lenders in the Collateral; or (2) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the Agent or Lenders of any of its rights and remedies under the Pre-Petition Credit Agreement, the Pre-Petition Loan Documents, this Order and/or the DIP Loan Documents or the Agent or Lenders' enforcement or realization upon any of the liens on or security interests in any Collateral.  The Agent shall retain its rights as a party in interest to object to any claims of any of the Debtor Professionals and the Committee Professionals, if any.

(ii)   Asset Sale Proceeds Carve Out.  Effective only upon the closing of the Asset Sale and the contemporaneous distribution of the proceeds therefrom to Agent (after payment of any prior amounts, such as the Professional Fee Carve Out and Prior Claims) for application to and payment of the Indebtedness (except as described below with respect to a Credit Bid by Agent), (a) the first $100,000 of proceeds of Collateral that would otherwise have been payable to Agent for application to and payment of the Indebtedness (or, in the event of a successful Credit Bid by Agent, a $100,000 cash payment by Agent) shall be delivered to an escrow account designated by counsel to the Committee exclusively in trust for the benefit of holders of priority unsecured pre-petition wage and benefit claims allowed under section 507(a)(4) of the Bankruptcy Code and non-priority, prepetition general unsecured creditors of the Debtor's estate (the "Unsecured Creditor Escrow"), (b) the PASA CD shall be deposited  into the Unsecured Creditor Escrow and (c) upon (1) the receipt by Agent (after payment of any prior amounts, such as the Professional Fee Carve Out and any Prior Claims) of a total amount of $47,000,000 of cash proceeds of Collateral for application to and payment of the Indebtedness or (2) following any successful

Credit Bid by Agent for the Collateral, then Agent shall assign its remaining claims and rights on account of its Indebtedness (including any unsecured claim for administrative expense arising under sections 507(a)(1) or 507(b) of the Bankruptcy Code in connection with the Post-Petition Financing) to an agent designated by the Committee, who shall thereafter be entitled to exercise all such rights and collect all such claims and the proceeds thereof for the benefit of holders of priority unsecured pre-petition wage and benefit claims allowed under section 507(a)(4) of the Bankruptcy Code and the non-priority, prepetition general unsecured creditors of the Debtor's estate (collectively, the "Asset Sale Carve Out," and, together with the "Professional Fee Carve Out," the "Carve Out").  Notwithstanding anything herein to the contrary, and for avoidance of doubt, (i) none of the Professional Fee Carve Out shall be taken from the Asset Sale Carve Out, which is reserved exclusively for the benefit of non-priority, prepetition general unsecured creditors of the Debtor's estate and (ii) the PASA CD will be subject to the Asset Sale Carve Out and preserved without exception for the benefit of the Unsecured Creditor Escrow unless each of the following conditions are satisfied:  (x) the Termination Date has occurred prior to the closing of an Asset Sale (whether pursuant to cash bid or Credit Bid or some combination thereof) in this Chapter 11 Case and (y) the PASA CD is determined (whether before or after the Termination Date) by a final non-appealable order to be part of the Pre-Petition Collateral.

(9)    Remedies; Automatic Stay.

(a)  The Debtor and the Committee stipulate that, subject to the provisions of Local Rule 9021-1(b), the Agent and the Lenders are entitled to and shall have relief from the automatic stay pursuant to § 362 of the Bankruptcy Code to permit them to perform in accordance with, and exercise, enjoy and enforce their rights, benefits, privileges and remedies pursuant to this Stipulation and any order approving this Stipulation without further application or motion to, or order from, the Court.  The Agent shall immediately notify the Debtor and the Committee of any actions it takes pursuant to this Section J(9)(a).+

(b)  The Debtor and the Committee stipulate that the Agent and the Lenders shall be further entitled, subject to the provisions of Local Rule 9021-1(b), to relief from the automatic stay pursuant to § 362 of the Bankruptcy Code upon the Termination Date, upon three (3) business days' written notice to the Debtor (with a copy to counsel for the U.S. Trustee and the Committee), to exercise the rights and remedies available under this Stipulation and any order approving this Stipulation or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Collateral and appointing a receiver with respect thereto, without further order or application to the Court, so long as no order prohibiting such action is entered by this Court during the above-referenced three (3) business day period.  The Debtor and the Committee stipulate that, subject to the provisions of Local Rule 9021-1(b), the only issue at any hearing during such three (3) business day period that may be raised by any party shall be limited to whether, in fact, the Termination Date has occurred, and such party shall have the burden of proof and the Debtor and the Committee shall be deemed to have waived their rights (if any) to seek any other relief (including, without limitation, any right to use, or seek authority from the Court to use, any Pre-Petition Collateral or the proceeds thereof, alternative financing under section 364 of the Bankruptcy Code, injunctive relief under section 105 of the Bankruptcy Code, or otherwise).

(c)    The Debtor agrees to cooperate with the Agent in connection with any enforcement action authorized by this Stipulation and any order approving this Stipulation by, among other things, (A) providing access to its premises to representatives of the Agent, (B) providing Agent access to the Debtor's books and records, and (C) performing all other obligations set forth in the Pre-Petition Credit Agreement, the Pre-Petition Loan Documents, this Stipulation and any order approving this Stipulation and/or the other DIP Loan Documents, and Debtor and the Committee shall not otherwise interfere or encourage others to interfere with the Agent's enforcement of its rights.  In addition, upon the Termination Date, the Debtor shall, at the request by the Agent, use commercially reasonable efforts to assist in the sale or other disposition of the Collateral on terms and conditions acceptable to the Agent (which acceptance shall not be unreasonably withheld), including to execute any documents to effect any transfer of the Collateral, and shall turn over the proceeds of such sale(s) or other disposition(s) to the Agent for application to the Indebtedness in accordance with the provisions hereof and the DIP Loan Documents.

(10)    No 506(c) Charges.    No costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including any expenses set forth in any Approved Budget or any other budget) by any person or entity shall be imposed against the Agent or Lenders, their claims, or their Collateral under § 506(c) of the Bankruptcy Code or otherwise, unless, prior to incurring such costs or expenses (i) the party proposing to incur such cost or expense shall obtain the written consent of the Agent (which consent may be withheld in its sole discretion) allowing such charge to be imposed against the Agent and Lenders, their claims or their Collateral under § 506(c) of the Bankruptcy Code, or (ii) the Court enters an order allowing such charge to be imposed against the Agent and Lenders, their claims or their Collateral under § 506(c) of the Bankruptcy Code.    Nothing in this Stipulation and any order approving this Stipulation or the Approved Budget or any other budget shall constitute consent to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including any amounts set forth in the Approved Budget or any other budget) against the Agent and Lenders, their claims or their Collateral under § 506(c) of the Bankruptcy Code or otherwise.

(11)    Effect of Dismissal, Conversion or Substantive Consolidation.    If the Chapter 11 Case is dismissed, converted, otherwise superseded or substantively consolidated, this Stipulation and all of the terms and conditions of this Stipulation and any order approving this Stipulation, including the liens and the priorities granted hereunder, and the Agent's and Lenders' rights hereunder and thereunder, shall be and remain binding (including on any trustee or estate representative) and in full force and effect as if such Chapter 11 Case had not been dismissed, converted, superseded or substantively consolidated.

(12)    No Modification of Stipulation.    The Debtor and the Committee shall not, without the Agent's prior written consent, seek to (or support any other party's attempt to) modify, vacate or amend this Stipulation and any order approving this Stipulation or any DIP Loan Documents. Notwithstanding any such stay, modification or vacatur, any Indebtedness outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Stipulation and any order approving this Stipulation, and the Agent and Lenders shall be entitled to all the rights, privileges and benefits,

-12-

including the security interests and priorities granted herein, with respect to all such Indebtedness.

(13)    Safe Harbor.  The Debtors, the Committee and the Agent stipulate and agree, and request that the Court find and order, that the Post-Petition Financing and the terms of this Stipulation should be subject to and entitled to the protections contained in § 364(e) of the Bankruptcy Code.

(14)    Releases.  The Debtor and its estate and the Committee hereby:  (a) release and discharge the Agent and Lenders, together with each of their affiliates, agents, attorneys, advisors, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Pre-Petition Loan Documents or this Stipulation, any aspect of the pre-petition relationship between the Agent and Lenders and the Debtor, or any other acts or omissions by the Agent or Lenders in connection with any of the Pre-Petition Loan Documents,  their pre-petition relationship with the Debtor and any agents or affiliates thereof or this Stipulation; (b) waive any and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Pre-Petition Indebtedness and the security interests in and liens on the Pre-Petition Collateral in favor of the Agent (which liens and security interests are first priority subject only to the Prior Liens); and (c) agree, without further Court order and without the need for the filing of any proof of claim, to the allowance of the pre-petition claims of the Agent and Lenders pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Pre-Petition Indebtedness in an amount of not less than the Minimum Stipulated Claim Amount (but each of the Debtor, the Committee and the Agent reserve their rights with respect to the allowance of Agent's claim for amounts in excess of the Minimum Stipulated Claim Amount).  In the event that a plan of liquidation or a plan of reorganization is filed in this Chapter 11 Case, the Debtor and the Committee will include therein and support the approval of full and general third party releases of the Agent, the Lenders and their each of their affiliates, agents, attorneys, advisors, officers, directors and employees. For avoidance of doubt, the releases contained herein (i) only relate to claims that are (x) are claims of the Committee or its members, (y) are property of the Debtor or the Debtor's bankruptcy estate or (z) relate to the allowance of the Pre-Petition Indebtedness against the Debtor or the validity, extent and priority of the Agent's liens and security interests in the Pre-Petition Collateral and (ii) do not extend to individual claims of nondebtor or non-Committee parties that are not claims of or shared by the Committee, the Debtor and/or its estate (such as claims of nondebtors against the Agent arising under any intercreditor or subordination agreement).

(15)    Limitation on Objections to Pre-Prepetition Indebtedness.  The Agent, Debtor and the Committee hereby stipulate and agree and request that the Court establish that (x) any party with proper standing other than the Debtor and the Committee shall have until October 7, 2013 (collectively, the "Objection Deadline") within which to file and to serve upon counsel for the Agent, objections or complaints respecting (i) the claims, causes of actions and defenses released by the Debtor and the Committee hereunder or (ii) the validity, extent, priority, avoidability, or enforceability of the Pre-Petition Indebtedness or the Agent's pre-petition liens on and pre-petition security interests in the Pre-Petition Collateral (any such party that timely files such an

-13-

objection or complaint, an "<u>Objecting Party</u>"), (y) in the event that no objections or complaints are filed with this Court and served upon counsel of record for the Agent prior to the Objection Deadline, the provisions of this Stipulation, including Section J(14) and the allowance of the Minimum Stipulated Claim Amount, shall become final and binding on all such parties on the Objection Deadline and (z) in the event that one or more objections or complaints are filed with this Court and served upon counsel of record for the Agent prior to the Objection Deadline, the provisions of this Stipulation, including Section J(14) and the allowance of the Minimum Stipulated Claim Amount, shall become final and binding on all parties other then the Objecting Parties on the Objection Deadline.

**STIPULATED, CONSENTED AND AGREED TO BY:**

NORTHERN BEEF PACKERS LIMITED PARTNERSHIP

By:    _____
      Joel D. Nesset
Attorney for Northern Beef Packers Limited Partnership


OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
NORTHERN BEEF PACKERS LIMITED PARTNERSHIP

By:    _____
      Patrick T. Dougherty
Attorney for Official Committee of Unsecured Creditors of
Northern Beef Packers Limited Partnership


WHITE OAK GLOBAL ADVISORS, LLC, AS AGENT AND LENDER

By:    _____
      Stephen R. Tetro II
Attorney for White Oak Global Advisors, LLC, as Agent and
Lender

## Exhibit A

### INITIAL APPROVED BUDGET

# **<u>EXHIBIT 2</u>**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH DAKOTA

| In re: | Bankr. No. 13-10118 |
|---|---|
| | Chapter 11 |
| Northern Beef Packers Limited Partnership SSN/ITIN 26-2530200 | **STIPULATION (REVISED) REGARDING SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)** |
| Debtor. | |

Northern Beef Packers Limited Partnership ("Northern Beef"), as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), the Official Committee of Unsecured Creditors appointed in this case (the "Committee") and White Oak Global Advisors, LLC (the "Agent"), as agent for itself and the other lenders (collectively, "Lenders"), each acting through their undersigned counsel, having agreed on the terms and conditions upon which the Debtor may obtain post-petition financing (the "Post-Petition Financing") up to an aggregate principal amount not to exceed $2,250,000, plus accrued interest on the aggregate principal amount (the "Commitment"), stipulate herein (the "Stipulation") for all purposes in this Chapter 11 Case (as defined below), and request that the Court so find and order, as follows:

A.      On July 19, 2013 (the "Petition Date"), the Debtor commenced a case (the "Chapter 11 Case") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") by filing a voluntary petition for relief with this Court.  The Debtor is continuing in possession of its property, and managing its business, as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B.      The Agent, as the agent and a lender, the other Lenders, as lenders, and Northern Beef, as borrower, are parties to that certain Loan and Security Agreement dated as of September 10, 2012 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "Pre-Petition Credit Agreement") and all collateral

and ancillary documents executed in connection therewith (the "Pre-Petition Loan Documents"), pursuant to which, among other things, Lenders agreed, subject to the terms and conditions set forth in the Credit Agreement, to make certain loans and other financial accommodations to Northern Beef (the "Pre-Petition Indebtedness"). As of the Petition Date, and subject to Paragraph J(15) hereof, the amount of the Pre-Petition Indebtedness (inclusive of principal, capitalized interest, and yield maintenance amounts) plus accrued and unpaid pre-petition interest, fees, expenses and other amounts chargeable under the Pre-Petition Loan Documents, was not less than $51,213,781.00 (the "Minimum Stipulated Claim Amount"). Agent shall file a proof of claim no later than five days before the final hearing before the Court to approve this Stipulation. The Agent, the Debtor and the Committee reserve their rights with respect to any alleged amounts of the claim of the Agent for Pre-Petition Indebtedness in excess of the Minimum Stipulated Claim Amount.

   C. The Committee and the Debtor stipulate that, in accordance with the terms of the Pre-Petition Loan Documents, the Debtor is truly and justly indebted to Lenders under the Pre-Petition Loan Documents, without defense, counterclaim or offset of any kind, and that as of the Petition Date (i) the Debtor was liable to Lenders in the amount of the Pre-Petition Indebtedness, which was not less than the amount set forth in paragraph B, above (but may be significantly more than such amount, and the Agent, the Lenders, the Debtor and the Committee reserve all rights with respect to any claim of the Agent or Lenders for an amount of Pre-Petition Indebtedness greater than that set forth in paragraph B, above), and (ii) as of the Petition Date, the Debtor and the Committee, in consideration of the Post-Petition Financing to be made under the Commitment, each waives and releases any and all causes of action and claims against the Agent and Lenders and each of their agents, representatives, assigns and successors.

LEGAL\17189014\1

D.      The Debtor and the Committee each further admits and acknowledges that, by reason of the Pre-Petition Loan Documents, the Pre-Petition Indebtedness is secured by enforceable liens and security interests granted by the Debtor to the Agent, for the benefit of Lenders, upon and in substantially all of the Debtor's assets and property, including[1] all of the Debtor's real property and all of the Debtor's assets and property in which a security interest can be obtained under the Uniform Commercial Code (including the setoff rights described below, the "Pre-Petition Collateral"), including equipment, inventory, accounts receivable, instruments, chattel paper, general intangibles, contracts, documents of title, and all other tangible and intangible personal property and the proceeds and products thereof.

E.      The Debtor does not have sufficient available sources of working capital and financing to maintain its assets or to pursue asset sales to maximize the value of the Debtor's estate without the Post-Petition Financing.  The ability of the Debtor to maintain and protect its assets is essential to maximizing the Debtor's estate while the Debtor pursues sale options.  The Debtor's need for financing is critical and immediate.  In the absence of the Post-Petition Financing there will be no funds to protect and maintain the Debtor's production facility and other assets and serious and irreparable harm to the Debtor and its estate would occur.  The permission to enter into the Post-Petition Financing and obtain funds hereunder is necessary to avoid immediate and irreparable harm to the Debtor.  This Stipulation and the Post-Petition Financing is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the flow of supplies and services to the Debtor necessary to preserve and protect the Debtor's assets, and for administration of this Chapter 11 Case so as to maximize the value of the Debtor's estate

---

[1]     The rules of construction set forth in section 102 of the Bankruptcy Code are incorporated by reference herein and shall apply to this Order.

-3-

F.       The Debtor and the Committee hereby stipulate and agree that they hereby consent, in the event that the Court fails to enter an order approving this Stipulation and the Post-Petition Financing set forth herein by September 12, 2013, to any request of Agent thereafter for relief from the automatic stay with respect to the Collateral, subject to the provisions of Local Rule 9021-1(b).

G.       Given the Debtor's current financial condition and capital structure, the Debtor is unable to obtain unsecured credit solely allowable under Bankruptcy Code § 503(b)(1) as an administrative expense.  Financing on a post-petition basis is not otherwise available without the Debtor securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to Bankruptcy Code § 364(c).

H.       The Debtor, the Committee and the Agent have stipulated that the Post-Petition Financing has been negotiated in good faith and at arm's-length between the Debtor, the Committee and the Agent, and any credit extended and loans made to the Debtor pursuant to this Stipulation shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code § 364(e).

I.       The Debtor, the Committee and the Agent have stipulated that the terms of this Stipulation, including the terms of the Post-Petition Financing, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

J.       The Debtor, the Committee and the Agent hereby stipulate to the following Post-Petition Financing Terms, which reflect a settlement and compromise between the Agent, the Debtor and the Committee after significant arms' length negotiations:

(1)      Post-Petition Financing Amounts.  The Agent and Lenders agree to lend, and the Debtor seeks to borrow, Post-Petition Financing in the interim amount of $512,000 through September 28, 2013 following entry of an interim order (the "Interim Order") approving this Stipulation, and, following the entry of a final order approving this Stipulation (the "Final Order"), in a total

amount (including any interim amounts borrowed) of up to $2,250,000 through the remaining period set forth in the Approved Budget (the "Budget Period"). The Agent and the Debtor agree to execute any customary loan, security or perfection documents ("DIP Loan Documents") deemed necessary by Agent (if any) to further reflect or memorialize the terms of the Post-Petition Financing as set forth herein.

(2)    Budget and Funding Mechanics.  The Post-Petition Financing will be used by the Debtor only to fund the amounts set forth in the budget attached hereto as Exhibit A (the "Initial Approved Budget") or in any subsequent or modified budget as agreed to by the Debtor, the Agent and the Committee (such subsequent or modified budget, together with the Initial Approved Budget, an "Approved Budget").  The Post-Petition Financing will be funded into an escrow account designated by the Agent (the "Escrow Account") and disbursed by Agent to the Debtor on a weekly basis (on Friday of each week, or as soon thereafter as practical) in the amount of the following week's aggregate budgeted expenses less any cash then held by the Debtor, to be used by the Debtor only to pay up to the budgeted amount of each budgeted category of such following week's expenses.  Within three (3) days after each weekly period, the Debtor shall provide the Agent with a statement comparing actual cash receipts with budgeted cash receipts for such weekly period and comparing actual expenditures with budgeted expenditures for such weekly period by line item.  The Debtor shall not seek, assert, argue for, encourage or support the Debtor obtaining post-petition financing or the use of the Agent's and Lenders' cash collateral within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral") by the Debtor except as agreed herein or as expressly permitted and consented to by the Agent.  The Debtor agrees that amounts set forth in the Approved Budget only represent the limits on any payments authorized to be made by the Debtor, but no such payments shall be made without prior Court approval to the extent they are on account of (i) obligations incurred outside of the ordinary course after the date of the Interim Order or (ii) any claims (whether prepetition or postpetition) arising before the date of the Interim Order.

(3)    Interest and Fees; Adequate Protection.  The Post-Petition Financing will accrue interest (which shall accrue as PIK interest) at the rate of 9% per annum.  The Agent and Lenders (a) will not currently accrue or pay any interest or fees on the Pre-Petition Indebtedness after the Petition Date, (b) defer any determination as to whether the Pre-Petition Indebtedness is over- or under-secured until a later time and (c) reserve and preserve all of their rights to seek payment of post-petition interest, fees, costs and expenses with respect to the Pre-Petition Indebtedness to the extent that the Pre-Petition Indebtedness is ultimately found to be fully secured or as adequate protection (and to seek any and all other forms of adequate protection).

(4)    DIP Lien.  The Post-Petition Financing, including interest thereon, will be secured by a valid and automatically perfected lien on and security interest in all of the Debtor's existing and after-acquired assets and proceeds thereof (but excluding causes of action (the "Causes of Action") arising under §§ 502(d), 541, 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code and all proceeds therefrom) (collectively, the "DIP Collateral," and, together with the "Pre-Petition Collateral," the "Collateral") pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code (the "DIP Lien").  Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Lien shall be (without prejudice to the effect of any applicable intercreditor or security agreements) junior to all non-avoidable valid, enforceable and perfected liens and security

LEGAL\17189014\1

interests in favor of any person or entity on or in any assets of the Debtor, as pre-petition debtor, which existed on the Petition Date and are not subject to § 552(a) of the Bankruptcy Code ("Prior Liens"). Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lien shall also extend to all unencumbered assets of the Debtor, if any, except for Causes of Action. No liens or security interests granted to the Agent, and no claim of the Agent or Lenders, shall be subject to subordination to any other liens, security interests or claims under § 510 of the Bankruptcy Code or otherwise. No other claims, liens or security interests (that is, other than Prior Liens and Prior Claims) shall attach to the Collateral in this or any subsequent or superseding Case (including any conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto, collectively, "Successor Case") without the express written consent of the Agent (which consent may be withheld in its sole discretion).

(5)     Covenants. The Post-Petition Financing shall be subject to, and is expressly conditioned upon the Debtor's continuing compliance with, the following covenants by the Debtor:

(a)     By September 16, 2013, the Debtor shall have obtained the Court's approval of the Debtor's retention of Lincoln Partners Advisors LLC, on terms and conditions acceptable to the Agent (which acceptance shall not be unreasonably withheld), to market substantially all of the operating assets of the Debtor (including the Debtor's real estate and equipment) for sale (the "Asset Sale").

(b)     By October 15, 2013, the Debtor shall have entered into a binding agreement for an Asset Sale transaction, on terms and conditions acceptable to the Agent (which acceptance shall not be unreasonably withheld), subject to higher and better offers (the "Stalking Horse Bid") and filed a motion with the Court, acceptable in form and substance to the Agent, seeking Court approval of bid and sale procedures and seeking approval of the Stalking Horse Bid, subject to higher and better offers.

(c)     By October 29, 2013,  the Debtor shall have obtained entry by the Court of an order, in form and substance acceptable to the Agent (which acceptance shall not be unreasonably withheld), approving bid and sale procedures, the stalking horse bid (subject to higher and better offers) and scheduling an auction date and final sale hearing in accordance herewith.

(d)     By December 3, 2013, the Debtor and its advisors, in consultation with the Agent an the Committee, shall conduct an auction of the Debtor's operating assets.

(e)     By December 10, 2013, the Debtor shall have obtained entry by the Court of an order, in form and substance acceptable to the Agent (which acceptance shall not be unreasonably withheld), approving the Asset Sale.

(f)     By December 27, 2013, the Debtor will close the Asset Sale and deliver the net proceeds of such sale to the Agent after payment of all claims that are senior (after giving effect to all applicable intercreditor and subordination agreements) to the Pre-Petition Indebtedness or that are secured by Prior Liens that are senior (after giving effect to all applicable intercreditor and subordination agreements) to the liens securing

LEGAL\17189014\1

the Pre-Petition Indebtedness (up to the extent of the value of the collateral subject to the Prior Liens) ("Prior Claims") and applicable Carve Out, up to a maximum amount of $47 million of net proceeds to Agent.

(g)     The Debtor and its advisors shall provide the Agent and the counsel for the Committee with telephonic reports of all sale efforts, expressions of interest and offers received, to occur at least weekly and more frequently upon the Agent's or the Committee counsel's reasonable request, with access to Lincoln and any information that Lincoln is able to provide at Agent's and the Committee counsel's request, and with reasonable access to Debtor's employees and security company and any information that such employees and security company are reasonably able to provide at Agent's and the Committee counsel's request.

(h)     The Debtor shall keep the Agent and the counsel for the Committee informed on a current basis of the status of all written proposals, offers, letters of intent and indications of interest for purchase of the Debtor's assets received and provide the Agent and counsel for the Committee with copies of all such proposals and other related communications received from third parties within one (1) business day after the Debtor's receipt thereof.

(i)     Prior to the closing of the Asset Sale, the Debtor shall not use the Certificate of Deposit issued by Plains Commerce Bank, in the principal amount of $900,000.00, or any proceeds thereof, currently pledged to Plains Commerce Bank to support an irrevocable transferable standby letter of credit in favor of the South Dakota Animal Industry Board, as Trustee, pursuant to the Packers and Stockyards Act of 1921 (the "PASA CD") for any purposes without the joint written consent of the Agent and the Committee and the approval of the Court.  The DIP Lien extends to the PASA CD, subject to all Prior Liens, as provided in J(4) hereof.

(6)     Termination Date.  The Agent and the Lenders' willingness and Commitment to make loans hereunder shall immediately and automatically terminate upon the earliest to occur of the following (the "Termination Date"):

(i)     September 12, 2013, unless the Interim Order  is entered by the Court on or before such date, and September 2830, 2013, unless the Final Order is entered by the Court on or before such date (such dates subject to extension upon the written agreement of the Agent, the Committee, and Debtor);

(ii)     December 31, 2013;

(iii)    the date of the closing of the Asset Sale;

(iv)    the date of final indefeasible payment and satisfaction in full in cash of the Pre-Petition Indebtedness and all indebtedness and obligations owed under the Post-Petition Financing (the "DIP Indebtedness," and, together with the Pre-Petition Indebtedness, the "Indebtedness");

LEGAL\17189014\1

(v)   the Debtor files any motion with the Court seeking authority to sell the Debtor's business or any of Debtor's assets outside of the ordinary course of business without the prior written consent of the Agent, or the entry of an order by the Court authorizing the sale of the Debtor's business or any of Debtor's assets outside of the ordinary course of business without the prior written consent of the Agent;

(vi)   the occurrence of any violation or breach by the Debtor or the Committee of this Stipulation (including, but not limited to, the Debtor's failure to adhere to the Approved Budget as set forth in this Stipulation or violation of the covenants set forth in this Stipulation) or the terms in any order approving this Stipulation on an interim or final basis;

(vii)  the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case into a case under Chapter 7 of the Bankruptcy Code;

(viii) a trustee or an examiner is appointed in the Chapter 11 Case without the prior written consent of the Agent, or the Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the Agent;

(ix)  the Interim Order or Final Order approving this Stipulation is stayed, reversed, vacated, appealed, amended or otherwise modified in any respect without the prior written consent of the Agent;

(x)   this or any other Court enters an order or judgment in the Chapter 11 Case modifying, limiting, subordinating or avoiding the priority of any Indebtedness or the perfection, priority or validity of the Agent and Lenders' pre-petition or post-petition liens on any Collateral or imposing, surcharging or assessing against the Agent or Lenders or its claims or any Collateral any costs or expenses, whether pursuant to § 506(c) of the Bankruptcy Code or otherwise;

(xi)  an order is entered in the Chapter 11 Case granting relief from the automatic stay of Section 362 of the Bankruptcy Code to any holder or holders of a lien on any material collateral in allowing such holder or holders to foreclose or otherwise realize upon such liens;

(xii)  any motion or application is filed in the Chapter 11 Case seeking the entry of an order, or an order is entered in the Chapter 11 Case, approving any subsequent debtor-in-possession facility for borrowed money or other extensions of credit unless such subsequent facility and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash to the Agent and Lenders of all Indebtedness prior to, or concurrently with, any initial borrowings or other extensions of credit under such subsequent facility;

(xiii) any disclosure statement or Chapter 11 plan is filed in the Chapter 11 Case without the prior written consent of the Agent; or

-8-

(xiv) the effective date of any confirmed Chapter 11 plan in the Chapter 11 Case.

Upon the Termination Date, (a) all Indebtedness shall be immediately due and payable in cash (except as the Agent may otherwise agree in writing in its sole discretion) and (b) Lenders shall have no obligation to lend or advance any additional funds to the Debtor, or provide other financial accommodations to the Debtor.

(7)     Application of Proceeds.  Subject to the Carve Out (as defined below), all proceeds of Collateral, shall be applied, subject to Prior Claims as described herein, (A) first, to the Pre-Petition Indebtedness up to at least the Minimum Stipulated Claim Amount (with the Debtor and the Committee reserving their rights with respect to any alleged amounts of the claim of the Agent for Pre-Petition Indebtedness in excess of the Minimum Stipulated Claim Amount) (in such order as determined by the Agent in its sole discretion), and (B) second, to the DIP Indebtedness (in such order as determined by the Agent in its sole discretion).  The Debtor shall not have the right to direct the manner of application of any payments to the Agent or any other receipts by the Agent of proceeds of any Collateral other than in the manner set forth in this paragraph and the Pre-Petition Credit Agreement.  Any sale proceeds remaining after application of any proceeds on account of the Pre-Petition Indebtedness up to the Minimum Stipulated Claim Amount shall be distributed only upon further order of the Court, including any order confirming a chapter 11 liquidating plan.

No sale, lease or other disposition of Collateral outside the ordinary course of business (including any auction or other similar sales) may be done without the Agent's prior written consent.  The Agent and Lenders shall have the right to credit bid up to at least $47,000,000 for any asset or assets of the Debtor offered at a sale, lease or other disposition of Collateral outside the ordinary course of business (including any auction or other similar sales), and may, if the Agent or any Lender purchases such asset or assets, offset some or all of their secured claim against the purchase price of such asset or assets (the "Credit Bid").  The provisions of the Carve Out, as provided in Section J(8) hereof, shall apply in the event of any successful Credit Bid.

(8)     Carve-Out.  The DIP Lien shall be subject only to Prior Liens and to the Carve Out, as defined below.

(i)  Professional Fee Carve Out.

(a)  Agent hereby agrees that it shall (notwithstanding the occurrence of the Termination Date) fund payments of the following administrative expenses of the Estate from the Post-Petition Financing prior to the closing of the Asset Sale, and from the proceeds of the Collateral after the closing of the Asset Sale:  (1) the unpaid fees due and payable (or projected to be due and payable for the calendar quarter in which the Termination Date occurs) to the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930, and (2) the payment of Court-allowed and unpaid fees and disbursements incurred by Cozen O'Connor and Bantz, Gosch & Cremer, L.L.C. pursuant to § 327 of the Bankruptcy Code (collectively, the "Debtor Legal Professionals") prior to the Termination Date in an aggregate amount not to exceed $405,000, (3) the payment of Court-allowed and unpaid fees and disbursements incurred

-9-

by Lincoln Partners Advisors LLC ("Lincoln," and, collectively with the Debtor Legal Professionals, the "Debtor Professionals") prior to the Termination Date in accordance with the terms of the Court-approved retention of Lincoln, and (4) the payment of Court-allowed and unpaid fees and disbursements incurred by the professionals retained by the Committee pursuant to § 1103(a) of the Bankruptcy Code (collectively, the "Committee Professionals") prior to the Termination Date in an aggregate amount not to exceed $175,000, less (in each case) the sum of all unused pre-petition retainers (as of the Petition Date) and all post-petition amounts paid to the Debtor Professionals and the Committee Professionals, including all amounts paid to the Debtor Professionals and Committee Professionals from the Post-Petition Financing. The amounts specified in clauses (1), (2), (3) and (4) of this Section J(8), including the limitations therein, are collectively referred to herein as the "Professional Fee Carve Out".

(b)  Notwithstanding anything to the contrary in this Order or the DIP Loan Documents, the pre-petition and post-petition liens and security interests shall be senior to, and no proceeds of Indebtedness or Cash Collateral (including any pre-petition retainer funded by Lenders pursuant to the Pre-Petition Loan Documents) nor any Collateral (or proceeds thereof) may be used to pay, any and all claims for services rendered by any of the Debtor Professionals or Committee Professionals in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief:  (1) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Indebtedness or the liens and security interests of the Agent or Lenders in the Collateral; or (2) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the Agent or Lenders of any of its rights and remedies under the Pre-Petition Credit Agreement, the Pre-Petition Loan Documents, this Order and/or the DIP Loan Documents or the Agent or Lenders' enforcement or realization upon any of the liens on or security interests in any Collateral. The Agent shall retain its rights as a party in interest to object to any claims of any of the Debtor Professionals and the Committee Professionals, if any.

(ii)  Asset Sale Proceeds Carve Out.  Effective only upon the closing of the Asset Sale and the contemporaneous distribution of the proceeds therefrom to Agent (after payment of any prior amounts, such as the Professional Fee Carve Out and Prior Claims) for application to and payment of the Indebtedness (except as described below with respect to a Credit Bid by Agent), (a) the first $100,000 of proceeds of Collateral that would otherwise have been payable to Agent for application to and payment of the Indebtedness (or, in the event of a successful Credit Bid by Agent, a $100,000 cash payment by Agent) shall be delivered to an escrow account designated by counsel to the Committee exclusively in trust for the benefit of holders of priority unsecured pre-petition wage and benefit claims allowed under section 507(a)(4) of the Bankruptcy Code and non-priority, prepetition general unsecured creditors of the Debtor's estate (the "Unsecured Creditor Escrow"), (b) the PASA CD shall be deposited  into the Unsecured Creditor Escrow and (c) upon (1) the receipt by Agent (after payment of any prior amounts, such as the Professional Fee Carve Out and any Prior Claims) of a total amount of $47,000,000 of cash proceeds of Collateral for application to and payment of the Indebtedness or (2) following any successful

-10-

Credit Bid by Agent for the Collateral, then Agent shall assign its remaining claims and rights on account of its Indebtedness (including any unsecured claim for administrative expense arising under sections 507(a)(1) or 507(b) of the Bankruptcy Code in connection with the Post-Petition Financing) to an agent designated by the Committee, who shall thereafter be entitled to exercise all such rights and collect all such claims and the proceeds thereof for the benefit of holders of priority unsecured pre-petition wage and benefit claims allowed under section 507(a)(4) of the Bankruptcy Code and the non-priority, prepetition general unsecured creditors of the Debtor's estate (collectively, the "Asset Sale Carve Out," and, together with the "Professional Fee Carve Out," the "Carve Out").  Notwithstanding anything herein to the contrary, and for avoidance of doubt, (i) none of the Professional Fee Carve Out shall be taken from the Asset Sale Carve Out, which is reserved exclusively for the benefit of non-priority, prepetition general unsecured creditors of the Debtor's estate. and (ii) the PASA CD will be subject to the Asset Sale Carve Out and preserved without exception for the benefit of the Unsecured Creditor Escrow unless each of the following conditions are satisfied:  (x) the Termination Date has occurred prior to the closing of an Asset Sale (whether pursuant to cash bid or Credit Bid or some combination thereof) in this Chapter 11 Case and (y) the PASA CD is determined (whether before or after the Termination Date) by a final non-appealable order to be part of the Pre-Petition Collateral.

(9)     Remedies; Automatic Stay.

(a)  The Debtor and the Committee stipulate that, subject to the provisions of Local Rule 9021-1(b), the Agent and the Lenders are entitled to and shall have relief from the automatic stay pursuant to § 362 of the Bankruptcy Code to permit them to perform in accordance with, and exercise, enjoy and enforce their rights, benefits, privileges and remedies pursuant to this Stipulation and any order approving this Stipulation without further application or motion to, or order from, the Court.  The Agent shall immediately notify the Debtor and the Committee of any actions it takes pursuant to this Section J(9)(a).).+

(b)  The Debtor and the Committee stipulate that the Agent and the Lenders shall be further entitled, subject to the provisions of Local Rule 9021-1(b), to relief from the automatic stay pursuant to § 362 of the Bankruptcy Code upon the Termination Date, upon three (3) business days' written notice to the Debtor (with a copy to counsel for the U.S. Trustee and the Committee), to exercise the rights and remedies available under this Stipulation and any order approving this Stipulation or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Collateral and appointing a receiver with respect thereto, without further order or application to the Court, so long as no order prohibiting such action is entered by this Court during the above-referenced three (3) business day period.  TheThe Debtor and the Committee stipulate that, subject to the provisions of Local Rule 9021-1(b), the only issue at any hearing during such three (3) business day period that may be raised by any party shall be limited to whether, in fact, the Termination Date has occurred, and such party shall have the burden of proof and the Debtor and the Committee shall be deemed to have waived their rights (if any) to seek any other relief (including, without limitation, any right to use, or seek authority from the Court to use, any Pre-Petition Collateral or the proceeds thereof, alternative financing under section 364 of the Bankruptcy Code, injunctive relief under section 105 of the Bankruptcy Code, or otherwise).

-11-

(c)     The Debtor agrees to cooperate with the Agent in connection with any enforcement action authorized by this Stipulation and any order approving this Stipulation by, among other things, (A) providing access to its premises to representatives of the Agent, (B) providing Agent access to the Debtor's books and records, and (C) performing all other obligations set forth in the Pre-Petition Credit Agreement, the Pre-Petition Loan Documents, this Stipulation and any order approving this Stipulation and/or the other DIP Loan Documents, and Debtor and the Committee shall not otherwise interfere or encourage others to interfere with the Agent's enforcement of its rights.  In addition, upon the Termination Date, the Debtor shall, at the request by the Agent, use commercially reasonable efforts to assist in the sale or other disposition of the Collateral on terms and conditions acceptable to the Agent (which acceptance shall not be unreasonably withheld), including to execute any documents to effect any transfer of the Collateral, and shall turn over the proceeds of such sale(s) or other disposition(s) to the Agent for application to the Indebtedness in accordance with the provisions hereof and the DIP Loan Documents.

(10)    No 506(c) Charges.  No costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including any expenses set forth in any Approved Budget or any other budget) by any person or entity shall be imposed against the Agent or Lenders, their claims, or their Collateral under § 506(c) of the Bankruptcy Code or otherwise, unless, prior to incurring such costs or expenses (i) the party proposing to incur such cost or expense shall obtain the written consent of the Agent (which consent may be withheld in its sole discretion) allowing such charge to be imposed against the Agent and Lenders, their claims or their Collateral under § 506(c) of the Bankruptcy Code, or (ii) the Court enters an order allowing such charge to be imposed against the Agent and Lenders, their claims or their Collateral under § 506(c) of the Bankruptcy Code.  Nothing in this Stipulation and any order approving this Stipulation or the Approved Budget or any other budget shall constitute consent to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including any amounts set forth in the Approved Budget or any other budget) against the Agent and Lenders, their claims or their Collateral under § 506(c) of the Bankruptcy Code or otherwise.

(11)    Effect of Dismissal, Conversion or Substantive Consolidation.  If the Chapter 11 Case is dismissed, converted, otherwise superseded or substantively consolidated, this Stipulation and all of the terms and conditions of this Stipulation and any order approving this Stipulation, including the liens and the priorities granted hereunder, and the Agent's and Lenders' rights hereunder and thereunder, shall be and remain binding (including on any trustee or estate representative) and in full force and effect as if such Chapter 11 Case had not been dismissed, converted, superseded or substantively consolidated.

(12)    No Modification of Stipulation.  The Debtor and the Committee shall not, without the Agent's prior written consent, seek to (or support any other party's attempt to) modify, vacate or amend this Stipulation and any order approving this Stipulation or any DIP Loan Documents. Notwithstanding any such stay, modification or vacatur, any Indebtedness outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Stipulation and any order approving this Stipulation, and the Agent and Lenders shall be entitled to all the rights, privileges and benefits,

-12-

including the security interests and priorities granted herein, with respect to all such Indebtedness.

(13)   Safe Harbor.  The Debtors, the Committee and the Agent stipulate and agree, and request that the Court find and order, that the Post-Petition Financing and the terms of this Stipulation should be subject to and entitled to the protections contained in § 364(e) of the Bankruptcy Code.

(14)   Releases.  The Debtor and its estate and the Committee hereby:  (a) release and discharge the Agent and Lenders, together with each of their affiliates, agents, attorneys, advisors, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Pre-Petition Loan Documents or this Stipulation, any aspect of the pre-petition relationship between the Agent and Lenders and the Debtor, or any other acts or omissions by the Agent or Lenders in connection with any of the Pre-Petition Loan Documents,  their pre-petition relationship with the Debtor and any agents or affiliates thereof or this Stipulation; (b) waive any and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Pre-Petition Indebtedness and the security interests in and liens on the Pre-Petition Collateral in favor of the Agent (which liens and security interests are first priority subject only to the Prior Liens); and (c) agree, without further Court order and without the need for the filing of any proof of claim, to the allowance of the pre-petition claims of the Agent and Lenders pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Pre-Petition Indebtedness in an amount of not less than the Minimum Stipulated Claim Amount (but each of the Debtor, the Committee and the Agent reserve their rights with respect to the allowance of Agent's claim for amounts in excess of the Minimum Stipulated Claim Amount).  In the event that a plan of liquidation or a plan of reorganization is filed in this Chapter 11 Case, the Debtor and the Committee will include therein and support the approval of full and general third party releases of the Agent, the Lenders and their each of their affiliates, agents, attorneys, advisors, officers, directors and employees. For avoidance of doubt, the releases contained herein (i) only relate to claims that are (x) are claims of the Committee or its members, (y) are property of the Debtor or the Debtor's bankruptcy estate or (z) relate to the allowance of the Pre-Petition Indebtedness against the Debtor or the validity, extent and priority of the Agent's liens and security interests in the Pre-Petition Collateral and (ii) do not extend to individual claims of nondebtor or non-Committee parties that are not claims of or shared by the Committee, the Debtor and/or its estate (such as claims of nondebtors against the Agent arising under any intercreditor or subordination agreement).

(15)   Limitation on Objections to Pre-Prepetition Indebtedness.  The Agent, Debtor and the Committee hereby stipulate and agree and request that the Court establish that (x) any party with proper standing other than the Debtor and the Committee shall have until October 7, 2013 (collectively, the "Objection Deadline") within which to file and to serve upon counsel for the Agent, objections or complaints respecting (i) the claims, causes of actions and defenses released by the Debtor pursuant to this paragraph and the Committee hereunder or (ii) the validity, extent, priority, avoidability, or enforceability of the Pre-Petition Indebtedness or the Agent's pre-petition liens on and pre-petition security interests in the Pre-Petition Collateral (any such party

-13-

that timely files such an objection or complaint, an "<u>Objecting Party</u>"), (y) in the event that no objections or complaints are filed with this Court and served upon counsel of record for the Agent prior to the Objection Deadline, the provisions of this Stipulation, including Section J(14) and the allowance of the Minimum Stipulated Claim Amount, shall become final and binding on all such parties on the Objection Deadline and (z) in the event that one or more objections or complaints are filed with this Court and served upon counsel of record for the Agent prior to the Objection Deadline, the provisions of this Stipulation, including Section J(14) and the allowance of the Minimum Stipulated Claim Amount, shall become final and binding on all parties other then the Objecting Parties on the Objection Deadline.

LEGAL\17189014\1

**STIPULATED, CONSENTED AND AGREED TO BY:**

NORTHERN BEEF PACKERS LIMITED PARTNERSHIP

By: _____
      Joel D. Nesset
Attorney for Northern Beef Packers Limited Partnership


OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
NORTHERN BEEF PACKERS LIMITED PARTNERSHIP

By: _____
      Patrick T. Dougherty
Attorney for Official Committee of Unsecured Creditors of
Northern Beef Packers Limited Partnership


WHITE OAK GLOBAL ADVISORS, LLC, AS AGENT AND LENDER

By: _____
      Stephen R. Tetro II
Attorney for White Oak Global Advisors, LLC, as Agent and
Lender

-15-

# Exhibit A

## INITIAL APPROVED BUDGET