**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH DAKOTA**

| | | |
|---|---|---|
| In re: | : | Bankr. No. 13-10118 |
| | : | Chapter 11 |
| NORTHERN BEEF PACKERS | : | |
| LIMITED PARTNERSHIP, | : | |
| Tax ID/EIN 26-2530200 | : | |
| | : | |
| Debtor. | : | |
| | : | |

**OBJECTION OF THE UNITED STATES, ON BEHALF OF
THE DEPARTMENT OF AGRICULTURE,
TO THE PROPOSED ORDER APPROVING THE SALE OF THE DEBTOR'S
ASSETS**

The United States, on behalf of the Department of Agriculture ("USDA"), hereby objects to the Debtor's proposed order approving the purchase agreement and authorizing the sale of substantially all of the debtor's assets ("Sales Order") (Docket No. 466) at pp. 31-44(C-1-C-14). The Sales Order, among other things, authorizes the sale of substantially all of debtor's assets free and clear of all liens, claims, interests, encumbrances, and certain liabilities, including liabilities "with respect to any operations incurred in connection with, or in any way related to the Operating Assets, prior to the date of Closing or by reason of such transfer under the laws of the United States . . . ."(Docket No. 466) (Sales Order) at p.35(C-5, ¶ 5).

The proposed sale assets include the debtor's interests in a beef processing facility that is subject to, among other things, numerous health and safety requirements under food safety laws administered by the USDA, as well as is subject to other requirements under other laws administered by the

USDA. Any purchaser or other non-debtor must comply with all such USDA health and safety requirements, as well as other USDA requirements. These include liabilities ". . . incurred in connection with, or in any way related to the Operating Assets, prior to the date of Closing or by reason of such transfer under the laws of the United States . . . ." (Docket No. 466)(Sales Order) at p. 35 (C-5, ¶5).

The USDA requests that the debtor includes, in any proposed order authorizing the sale, the following language:

> Nothing in this Sales Order, the Purchase Agreement, the Sale Transaction or any other document: (1) releases, nullifies, precludes, or enjoins the enforcement of any liability to the United States Department of Agriculture(USDA)(or any governmental unit) under its police or regulatory statutes or regulations to which any entity or person, including the purchaser and other non-debtors, would be subject; (2) shall be construed to limit, impair, affect or impede the police and regulatory powers of the USDA (or any governmental unit); (3) authorizes the transfer to any entity or person, including the purchaser and other non-debtors, of any licenses, permits, registrations, or other governmental authorizations and approvals without that entity's or person's compliance with all applicable requirements under non-bankruptcy law governing such transfers; (4) enjoins or precludes the USDA (or any governmental unit) from exercising its rights under the Bankruptcy Code, including its rights explicitly granted under section 525(a) of the Code (11 U.S.C. § 525(a)) with respect to the Packers and Stockyards Act (7 U.S.C. § 181 et seq) and other acts administered by the USDA.

In support of its objection, the USDA avers as follows:[1]

---

[1] The USDA has not been served with a copy of the Purchase Agreement and it hereby reserves its right to supplement its objections to the terms of the Sales Motion and Order upon its receipt of this document.

## BACKGROUND

The debtor owns a beef processing facility in Aberdeen, South Dakota. (Docket No. 466.) The debtor's facility is regulated under several USDA statutes, including the Federal Meat Inspection Act (FMIA) (21 U.S.C. § 601 et seq.), the Agricultural Marketing Act of 1946, as amended (AMA) (7 U.S.C. § 1601 et seq.), and the Packers and Stockyards Act (PSA) (7 U.S.C. § 181 et seq.). The USDA administers all of the aforementioned acts.

The FMIA, and the regulations enacted under its authority ( 9 C.F.R. Parts 300-331, 391, 416-417, 424, 441-442, and 500) regulate the slaughter of livestock and the preparation and processing of meat products obtained from them in order to prevent the distribution of meat products that are adulterated or misbranded (21 U.S.C. § 602). The FMIA requires establishments that prepare meat products for distribution in interstate or foreign commerce to have the meat products they prepare federally inspected (21 U.S.C. §§ 603, 604, 605, 606). The FMIA, among other things, prohibits: the preparation of meat products that are capable of human use that are prepared at an establishment for distribution in commerce in any manner except in compliance with the FMIA; the sale, transport, offer for sale or transportation of any meat products that are capable of use for human food that are adulterated or misbranded at the time of such sale, transportation, offer for sale or transportation, and the sale, transport, or offer for sale and transport of any meat products that are required to be inspected unless they have been

3

inspected and passed. (21 U.S.C. § 610).  The FMIA also prohibits, among other things, the use without authorization from the Secretary of Agriculture of any official mark, device, or certificate, and the knowing representation that a meat product has been inspected and passed under the FMIA, when, in fact, it has not been inspected and passed. (21 U.S.C. § 611).

The debtor's facility is also regulated under the Agricultural Marketing Act of 1946, as amended (AMA) (7 U.S.C. § 1601 et seq.) and the Packers and Stockyards Act (PSA) (7 U.S.C. § 181 et seq.).  The AMA regulates the marketing of various agricultural products in domestic and international markets. The PSA regulates the marketing of livestock and poultry and other related agricultural products and helps ensure open and competitive markets for livestock and poultry.

Through the Sale Motion, the debtor seeks approval of the Sales Order, substantially in the form attached to its Sale Motion (Docket No. 466) p.13, ¶ 37) which proposes to sell  substantially all of debtor's operating assets "free and clear of liens, claims, and encumbrances, other than the Assumed Liabilities ." (Docket No. 466) at pp.13-14, ¶ 37(a) and 19, ¶ 59.  The proposed sale assets include the debtor's rights with respect to real property. (Docket No. 466) at pp.6-7, ¶ 23(a).   In addition, the proposed sale of assets includes any "license, permit, registration, and governmental authorization or approval of the Debtor with respect to its operating assets". . . "to the full extent permissible under applicable law" (Docket No. 466) at p. 38, ¶ 15.

4

**ARGUMENT**

1. <u>A Bankruptcy Sale Cannot Preclude a Purchaser's or Other Non-Debtor's Obligation to Protect the Public in Accordance with Federal Food and Safety Laws or other laws of the Federal Government.</u>

The regulations enacted under the FMIA which are found in 9 C.F.R., subchapters A, D and E (9 C.F.R. §§ 300-335, 390-392, and 416-500) set forth requirements that must be met by a meat processing establishment such as the one debtor operated. Among these requirements are the requirement that an establishment obtain a grant of inspection, meet specified sanitary requirements, meet various labeling requirements, and meet requirements for Hazard Analysis and Critical Control Point Systems. Before operations can be conducted at meat establishments that are required to have their products federally inspected, an application for a grant of inspection must be submitted to FSIS and approved. Specified conditions must be met in order for an establishment to obtain a grant of inspection. When the ownership of an establishment changes, the location of an establishment changes, or the establishment's name changes, a new application for inspection must be submitted and approved. (9 C.F.R. 302, 304-307).

The debtor, and any purchaser of debtor's assets or other non-debtor, must comply with their obligations under the FMIA and any other USDA laws and regulations that may be applicable. Section 363 of the Bankruptcy Code, 11 U.S.C. § 363, upon which the debtor's sale documents primarily rely, does not preempt non-bankruptcy law. To the contrary, various authorities subject

the debtors to non-bankruptcy regulation. See, e.g., 11 U.S.C. § 362(b) (4); 28 U.S.C. § 959(b). Moreover, USDA regulatory requirements are not contracts and cannot be assigned or otherwise transferred in bankruptcy except in compliance with non-bankruptcy law. See e.g., LaRose v. FCC, 494 F.2d 1145, 1148 (D.C. Cir. 1974) (bankruptcy court's approval of license transfer was subject to FCC independently applying separate public interest standards for approvals under the Communications Act); United States v. American Nat'l Can Co., 126 F.Supp. 2d 521, 531 (N.D. Ill. 2000) ("administrative orders derive their legal power from congressional and administrative mandate and not from contract law").

Further, nothing in bankruptcy law permits a purchaser or other non-debtor to ignore USDA's laws and regulations. It is well-established that anyone who acquires property from a debtor must comply with health and safety laws. No one is entitled to disregard laws that protect the public and the environment. See, e.g., Ohio v. Kovacs, 469 U.S. 274, 285 (1985); Zerand-Bernal, Inc. v. Cox, 23 F.3d 159, 163 (7th Cir. 1994) ("[N]o one believes . . . that a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale [or] . . . immunize such buyer from all state and federal laws that might reduce the value of the assets bought from the bankrupt."). USDA's laws and regulations are an essential protection for public safety because they ensure the safety of public food supplies. USDA's laws, such as the PSA and the AMA, are also an essential protection for the

6

public because they promote fair and competitive trading practices for the overall benefit of consumers and American agriculture.

These obligations exist under USDA's laws in order to protect the public from harm, regardless of when or how the harm originated. Here, the public should not be put at risk by a Sales Order that could allow a purchaser to argue (however erroneously) that the bankruptcy sale puts it in a privileged position, free from obligations with which all other owners and operators of property must comply. Instead, any Sales Order should be clear that it does not preempt the application of health and safety requirements or enjoin the purchaser's obligation to protect the public in accordance with USDA laws and regulations.

Accordingly, the United States respectfully requests that any Sales Order clarify, as proposed above, that:

> Nothing in this Sales Order, the Purchase Agreement, the Sale Transaction or any other document: (1) releases, nullifies, precludes, or enjoins the enforcement of any liability to the United States Department of Agriculture (USDA) (or any governmental unit) under its police and regulatory statutes or regulations to which any entity or person, including the purchaser and other non-debtors, would be subject; (2) shall be construed to limit, impair, affect or impede the police and regulatory powers of the USDA (or any governmental unit).

2. <u>The Debtor's Regulatory Approvals, Permits, Authorizations, Registrations and Licenses Cannot Be Transferred to a Purchaser or Other Non-Debtor Except in Accordance with Applicable Non-Bankruptcy Law.</u>

Just as a purchaser, or other non-debtor, must comply with the same

7

health and safety requirements as all other owners and operators of property, a purchaser must comply with the same licensing, permit, authorization, registration, approval, and food safety requirements as all other owners and operators of property. These requirements are essential safeguards for the public and food safety because they help ensure, among other things, that meat products that are distributed in commerce are not adulterated and not misbranded. A Sales Order cannot exempt a purchaser from obligations under non-bankruptcy law to apply for and obtain USDA regulatory approvals any more than it can exempt a purchaser from obligations under non-bankruptcy law to conduct safe and sanitary operations.

The proposed Sales Order purports to transfer any "license, permit, registration, and governmental authorization or approval of the Debtor with respect to its operating assets". . . "[t]o the full extent permissible under applicable law" (Docket No. 466) at p. 38, (C-8, ¶ 15), and states that the aforementioned are deemed to have been, and are directed to be, transferred to the Purchaser at closing. The term applicable law is not defined.

USDA's laws governing any authorizations and approvals applicable here, including the issuance of licenses, permits, and registrations can neither be deemed to be, nor directed to be, transferred to a purchaser or other non-debtor. A purchaser should not be in a position to contend that the sale

8

terms trump non-bankruptcy law and free it from satisfying permitting, inspection, approval, authorization or licensing requirements with which all other owners and operators of property must comply.

Accordingly, the United States respectfully requests that any Sales Order clarify, as proposed above, that nothing in this Sales Order, the Purchase Agreement, the Sales Transaction, or any other document:

> (3) authorizes the transfer to any entity or person, including the purchaser and other non-debtors of any licenses, permits, registrations, or other governmental authorizations and approvals without that entity's or person's compliance with all applicable requirements under non-bankruptcy law governing such transfers.

3. <u>A Bankruptcy Sale Cannot Enjoin or Otherwise Prevent the Government from Asserting, Persuing, or Prosecuting the Debtor, the Purchaser or Other Non-debtors for any Liabilities of any Nature that Arise Under Bankruptcy Law or Non-Bankruptcy Law.</u>

Just as the purchaser and other non-debtors are not entitled to preclude the USDA's food safety and other laws from applying to them, the purchaser and other non-debtors are not entitled to obtain an injunction through the bankruptcy court that precludes the USDA from bringing lawsuits against them. Here the purchaser and other non-debtors seek such an injunction through the provisions of the Sales Order. The Sales Order seeks to enjoin lawsuits against the purchaser and other non-debtors, including the purchaser's successors or assigns thereof, current and former officers, directors, attorneys, employees, affiliates, financial and other advisors and representatives, and the operating assets. (Docket No. 466), See, for example,

pp.41-42 (C 11-12, ¶ ¶ 29, 30, and 31).  A bankruptcy court does not have the blanket power to enjoin all future lawsuits against a purchaser at a bankruptcy sale or the power to immunize a buyer or other non-debtors from all state and federal laws that might reduce the value of the assets bought from the bankrupt. Zerand-Bernal, Ibid. at 163.

   The Sales Order which seeks to enjoin lawsuits against the Purchaser and a panoply of other non-debtors would improperly bar the United States from exercising its police and regulatory powers, and both violates and is barred by section 524(e) of the Bankruptcy Code (11 § U.S.C. 524(e)).  Section 524(e) confers no authority upon a bankruptcy court to discharge non-debtors, which is, in effect, what is sought by the Sales Order.  In virtually all circumstances, courts have rejected provisions in a plan of reorganization that compel creditors to release non-debtors from liability on the ground such provisions violate section 524(e) of the Code (11 U.S. C. § 524(e)). See, e.g., In re Lowenschuss. 67 F.3d 1394, 1401-02 (9th Cir. 1995); Matter of Zale Corp., 62 F.3d. 746,757-61 (5th Cir. 1995); In re Elisinore Shore Assocs., 91 B.R. 238 (Bankr. D. N.J. 1988); In re Future Enery Corp., 83 B.R.470, 486 (Bankr. S.D. Ohio 1988); In re 222 Liberty Assocs.,108 B.R. 971,996-97 (Bankr. E.D. Pa.1990).  Likewise, a court must reject such provisions in a Sales Order.  As explained by one court, "[s]ince a discharge is an extreme remedy, stripping a creditor of its claims against its will, it is a privilege reserved for those entities

which file a petition under the bankruptcy code and abide by its rules." In re Arrowmill Corp., 211 B.R. 497, 503 (Bankr. D.N.J. 1997)

According, the United States respectfully requests, as stated above that any Sales Order clarify that nothing in the Sales Order, the Purchase Agreement, the Sale Transaction, or other document:

> (1) releases, nullifies, precludes, or enjoins the enforcement of any liability to the United States Department of Agriculture (USDA) (or any governmental unit) under its police or regulatory statutes or regulations to which any entity or person, including the purchaser and other non-debtors, would be subject; (2) shall be construed to limit, impair, affect or impede the police and regulatory powers of the USDA (or any governmental unit).

4. <u>A Bankruptcy Sale Cannot Prevent the Government from Exercising Its Rights Under Section 525 of the Code (11 U.S.C. § 525)</u>

The Sales Order, Docket No. 466, at p.41(C-11, ¶28) states:

> Pursuant to section 525 of the Bankruptcy code, no governmental unit may revoke or suspend any permit or license relating to the Operating Assets sold, transferred or conveyed to the Purchaser on account of the filing or the pendency of the debtor's bankruptcy cases or the consummation of the transaction contemplated by the Purchase Agreement.

This is contrary to section 525(a) of the Code (11 U.S.C. § 525(a)) which explicitly gives the USDA the power to take these actions under, among other statutes administered by it, the PSA. Accordingly, the government respectfully requests that the Sales Order be clarified, as proposed above, to state as follows:

> Nothing in this Sales Order, the Purchase Agreement, the Sales Transaction, or other document: (4) enjoins or precludes the USDA (or any governmental unit) from exercising its rights under the

11

Bankruptcy Code, including its rights explicitly granted under section 525(a) of the Code (11 U.S.C. § 525(a)), with respect to the Packers and Stockyards Act (7 U.S.C. § 181 et seq). and other Acts administered by the USDA.

WHEREFORE, the United States respectfully requests that the Court deny the relief requested in the Sale Motion and grant such other relief as the Court deems necessary and just.

Dated: November 12, 2013.

>BRENDAN V. JOHNSON
>United States Attorney
>
>*/s/ Cheryl Schrempp DuPris*
>Cheryl Schrempp DuPris
>Assistant United States Attorney
>225 South Pierre Street, #337
>Pierre, South Dakota  57501
>(605) 224-5402
>Fax (605) 224-8305
>Cheryl.Dupris@usdoj.gov